THE STATE OF OHIO, APPELLANT, *v.* WELCH ET AL., APPELLEES.

[Cite as State *v.* Welch (1985), 18 Ohio St. 3d 88.]

(No. 84-1127—Decided July 3, 1985.)

*John T. Corrigan,* prosecuting attorney, *Richard J. Hartman* and *George J. Sadd,* for appellant.

*James R. Willis,* for appellees.

HOLMES, J. The court of appeals below stated that it was guided by the application of the "two pronged" knowledge and veracity test as developed by the United States Supreme Court in the *Aguilar* and *Spinelli* cases in its determination that probable cause did not exist for the warrantless search herein. Applying the law as it was perceived, the court held that the arrest and subsequent search were improper in that the state failed to establish the basis of the informants' knowledge or their credibility. It must be pointed out that our nation's highest court specifically abandoned the two pronged test in *Illinois* v. *Gates* (1983), ____ U.S. ____, 76 L. Ed. 2d 527, and supplanted in its stead a "totality of the

circumstances" test when determining probable cause for the issuance of a warrant. See, also, *Massachusetts* v. *Upton* (1984), ____ U.S. ____, 80 L. Ed. 2d 721. However, we do not address the *Gates* opinion as this case more closely presents an issue concerning the automobile exception to the Fourth Amendment.

It is essential at the outset to emphasize that the facts in the present case establish that neither an arrest nor search warrant was obtained by the officers. The warrantless search and subsequent arrests were carried out by officers who had received certain information from allegedly reliable informants which had been followed up by independent observation of the suspects' movements and, importantly for purposes of our discussion, the search was of a vehicle that had been stopped for investigation of transporting reported contraband.

Simply stated, this is a warrantless automobile search case and, as such, is to be determined upon the basis of *Carroll* v. *United States* (1925), 267 U.S. 132, and its progeny.

The cardinal principle of the Fourth Amendment is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States* (1967), 389 U.S. 347, 357.

One of the well-delineated exceptions to the Fourth Amendment mandates was established in *Carroll, supra,* wherein the court pronounced the so-called automobile exception to the warrant requirement. The *Carroll* case involved a warrantless search of an auto for "bootleg" whiskey during the prohibition era. After a thorough explanation as to the basis for the exception, the court held that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment.

Writing for a majority of the court, Chief Justice Taft stated at 153:

"* * * [T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

In essence, the above-quoted language enunciated the general policy statement that citizens have a lesser expectation of privacy in their vehicles than in private dwellings, and have no degree of privacy when carrying contraband in such vehicles.

In the progeny to *Carroll,* the court has continued to emphasize the importance that officers have probable cause to believe that the vehicle

which they search contains contraband. The court has repeatedly stated that probable cause must be based on objective facts that could justify the issuance of a warrant by a magistrate.[2]

The automobile exception was again reviewed, and expanded, by the United States Supreme Court in the case of *United States* v. *Ross* (1982), 456 U.S. 798, which held that where police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that may logically conceal the object of the search. The court stated that if any other conclusion would be reached, then the practical consequences of the *Carroll* decision would be largely nullified, as the permissible scope of a warrantless search of an automobile would not include containers and packages found therein. *Id.* at 820.[3]

Furthermore, in *Ross, supra,* the court specifically noted that it was not overruling the law set forth in *United States* v. *Chadwick* (1977), 433 U.S. 1, and *Arkansas* v. *Sanders* (1979), 442 U.S. 753. In those cases it was held that police officers had impermissibly carried out warrantless searches of a footlocker in the trunk of a defendant's automobile in *Chadwick,* and a green suitcase in the trunk of a taxi in *Sanders.* The *Ross* court, however, differentiated these prior cases upon the basis that the "automobile exception" was not applicable, in that the suspected contraband had been reported to be specifically within the aforestated containers, rather than a more generalized tip that the contraband would be transported somewhere within the automobile. Therefore, under those circumstances, it was the duty of the police to obtain a search warrant before opening the footlocker and traveling bag.

We also note that the holding in *Ross* has been approved and followed by the court in *United States* v. *Johns* (1985), 467 U.S. ____, 83 L. Ed. 2d 890, which held that the lawful warrantless search of a vehicle reported to be carrying contraband extended to an additional warrantless search of

---

[2] See *Chambers* v. *Maroney* (1970), 399 U.S. 42; *Cady* v. *Dombrowski* (1973), 413 U.S. 433; *Texas* v. *White* (1975), 423 U.S. 67; and *South Dakota* v. *Opperman* (1976), 428 U.S. 364.

[3] In clarifying the lawful breadth of a warrantless search of an automobile, the court utilized an interesting comparison between such a search and a lawful search of a home:

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. [Footnote omitted.] Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand. [Footnote omitted]." *Ross, supra,* at 820-821.

packages removed from such vehicle several days later. And, finally, the automobile exception was, most recently, held to include a motor home in a public place. *California* v. *Carney* (1985), 471 U.S. ___, 85 L. Ed. 2d 406.

Applying the law of *Carroll* and its progeny to the facts of this case, it is readily discernible that the arresting officers had sufficient probable cause to make the warrantless search of the vehicle. Officer Smith testified that he received numerous tips from informants that appellee Welch was a major dealer in illegal narcotics from Michigan, that an FBI agent informed him that Welch would arrive in Cleveland to purchase one-quarter pound of cocaine, that Welch would be at a given place at a specific time to procure such drugs, that Welch would be transporting twenty thousand "hits" of LSD, and that an additional informant verified much of the information that the officer possessed. Later, a man matching the description given to Smith arrived at the predescribed location in an automobile with Michigan license plates. Upon stopping and approaching the automobile, Officer Smith noticed the man previously described take a package from his clothing and throw it on the floor of the automobile. The totality of these facts and circumstances, coupled with the personal corroborating observations of the officers, clearly established probable cause for the warrantless search of the entire automobile in question. *Ross, supra.*[4]

Therefore, the judgment of the court of appeals is hereby reversed.

*Judgment reversed.*

CELEBREZZE, C.J., O'NEILL, LOCHER, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment only.

O'NEILL, J., of the Seventh Appellate District, sitting for SWEENEY, J.

---

[4] It could reasonably be concluded from the facts that the further search of the vehicle subsequent to the officers' placing appellees under lawful arrest would have been lawful either upon the basis of being incidental to the arrests, or upon the basis of an inventory search.